**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| HARTFORD UNDERWRITERS INSURANCE COMPANY, | Civil Action No.: 16-cv-1128-CCC-JBC |
| Plaintiff, | |
| v. | OPINION |
| PAYSTAFFING, LLC, *et al.*, | |
| Defendants. | |

**CECCHI, District Judge.**

**I.   INTRODUCTION**

This matter comes before the Court on the motion of defendants Paystaffing, LLC ("Paystaffing"), Pay2Staff, LLC ("Pay2Staff"), Nadia Khalil ("Kahlil"), and Monica Varas ("Varas") to dismiss the First, Second, Fourth, and Fifth Counts of Plaintiff Hartford Underwriters Insurance Company's ("Hartford") Complaint. ECF No. 5. Hartford opposes the motion. ECF No. 10. The motion is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court denies the motion.

**II.   BACKGROUND**[1]

The state of New Jersey has created an involuntary or residual market for workers' compensation insurance, the New Jersey Workers' Compensation Insurance Plan ("New Jersey

---

[1] For the purposes of this motion only, the Court accepts all well-pleaded allegations in the Complaint as true and draws all reasonable inferences in favor of Defendants. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

1

Plan"). Compl. ¶ 15. The New Jersey Plan is administered by the New Jersey Compensation Rating and Inspection Bureau ("CRIB"). Compl. ¶ 17.

On or about July 6, 2010, Paystaffing, a New Jersey limited liability company (Compl. ¶ 2), executed and submitted to CRIB an application for an insurance company to be designated to provide insurance to it in accordance with the New Jersey Plan. Compl. ¶ 21. The application indicated Defendant Khalil was the contact person for books and records concerning Paystaffing and was the sole owner of Paystaffing. Compl. ¶¶ 23-24.

Plaintiff Hartford is a Connecticut corporation involved in the provision of workers' compensation insurance under the New Jersey Plan. Compl. ¶¶ 1, 15, 28. On May 8, 2013, in a Notice of Redesignation, CRIB designated Hartford to provide coverage to Paystaffing, effective July 7, 2013. The Notice of Redesignation directed that a newly completed application should be completed by Paystaffing within 30 days. Compl. ¶¶ 28-29. On July 7, 2013, Hartford began providing workers' compensation and employers liability insurance to Paystaffing. Compl. ¶ 30.

On or about October 10, 2013, Paystaffing submitted an updated application. Compl. ¶ 35. The updated application indicated Defendant Varas was the contact person for books and records concerning Paystaffing and was the sole owner of Paystaffing. Compl. ¶¶ 38-39. The updated application indicated that there had been no ownership change in the past three years. Compl. ¶ 39. The updated application indicated that both the current total wages for Paystaffing and the projected total wages were $1,765,443. Compl. ¶¶ 40-41. In July 2014, an audit was completed that indicated Paystaffing had more than $6 million in payroll. Compl. ¶¶ 42-45. Subsequently, Paystaffing entered into a Payment Plan Agreement, under which it agreed to pay Plaintiff $282,928 in five payments. Compl. ¶ 47. These payments were not made. Compl. ¶ 48. Plaintiff

further alleges that Paystaffing and Varas misclassified employees as working in lower risk positions than they in fact were. Compl. ¶¶ 49-50.

Plaintiff alleges that while Paystaffing and Varas disputed the audit and negotiated the Payment Plan Agreement, "the business of Paystaffing was transferred to Pay2Staff and Paystaffing ceased operations." Compl. ¶ 51. Plaintiff further alleges Paystaffing and Pay2Staff had the same or substantially similar ownership, clients, websites, operations and employees. Compl. ¶ 52.

On February 29, 2016, Plaintiff brought suit against Defendants listing five Counts. ECF No. 1. On April 9, 2016, Defendants moved to dismiss the First, Second, Fourth, and Fifth Counts of the Complaint. ECF No. 5. Plaintiff submitted a brief in Opposition on May 18, 2016, ECF No. 10, and Defendants filed a Reply on June 13, 2016, ECF No. 13.

### III. LEGAL STANDARD

For a complaint to survive a motion to dismiss pursuant to Rule 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When evaluating the sufficiency of a complaint, Courts are required to accept all well-pleaded allegations in the Complaint as true and to draw all reasonable inferences in favor of the non-moving party. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Furthermore, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal citations and quotations omitted). Accordingly, "a complaint must do more than allege the plaintiff's entitlement to relief.

A complaint has to 'show' such entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

The Federal Rules of Civil Procedure contain a heightened pleading standard for claims of fraud. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). The Third Circuit has stated that "[t]o satisfy the particularity standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Feingold v. Graff*, 516 F. App'x. 223, 226 (3d Cir. 2013) (internal quotation omitted).

## IV.   DISCUSSION – CLAIM 1

The First Count in Plaintiff's complaint is titled "Claim for Workers' Compensation Fraud Pursuant to N.J.S.A. 34:15-57.4." Subsection (b) of section 34:15-57.4 "imposes civil liability against 'any person who wrongfully obtains benefits or evades the full payment of benefits or premiums by means of a violation of the provisions of [34:15-57.4(a)].'" *Travelers Prop. Cas. Co. of Am. v. Quickstuff, LLC.*, No. CV 14-6105 (RBK/JS), 2016 WL 7231605, at *4 (D.N.J. Dec. 14, 2016). Subsection (a) of section 34:15-57.4, makes it a crime where a person "purposely or knowingly:"

> (2) Makes a false or misleading statement, representation or submission, including a misclassification of employees, or engages in a deceptive leasing practice, for the purpose of evading the full payment of benefits or premiums pursuant to R.S.34:15-1 et seq.; or
>
> (3) Coerces, solicits or encourages, or employs or contracts with a person to coerce, solicit or encourage, any individual to make a false or misleading statement, representation or submission concerning any fact that is material to a claim for benefits, or the payment of benefits or premiums, pursuant to R.S.34:15-1 et seq. for the purpose of wrongfully obtaining the benefits or of evading the full payment of the benefits or premiums.

Defendants' first argument, that this claim should be dismissed "because none of the Defendants have been found in a criminal action to have violated subsection (a)," is unavailing. Section 34:15-57.4(b) does not on its face require that plaintiff allege a criminal conviction under subsection (a) to support a civil claim under the section. Rather, a plaintiff need only allege a "violation of the provisions" of subsection (a).[2] Therefore, a plaintiff in a civil action may recover even if the elements of the offense could not be proven beyond a reasonable doubt. *Singh v. Cream-O-Land Dairy*, No. A-2468-06T5, 2008 WL 794526, at *6 (N.J. Super. Ct. App. Div. Mar. 27, 2008).

Defendants' second argument, that the claim should be dismissed because "none of the Defendants acted purposely or knowingly because it was impossible for them to evade premiums, or to purposely or knowingly attempt to evade premiums, by making false statements on the applications" in light of the audit provisions of the policies, ECF No. 5-1 at 4, also fails at this stage. Under the language of section 34:15-57.4 Plaintiff need not plead that Defendants were likely to succeed in their alleged fraud, only that they "purposely or knowingly" undertook the specified actions with the intent to "evad[e] the full payment of benefits or premiums" or to "wrongfully obtaining the benefits or . . . evad[e] the full payment of the benefits or premiums." *C.f. Travelers Prop. Cas. Co. of Am.*, 2016 WL 7231605, at *5 (denying summary judgment to defendant who argued there could be no liability because there was no injury to the plaintiff in light of the cancellation of his policy).

---

[2] "The criminal provision of *N.J.S.A.* 34:15-57.4 is distinct and separate from the civil penalty provisions." *Singh v. Cream-O-Land Dairy*, No. A-2468-06T5, 2008 WL 794526, at *6 (N.J. Super. Ct. App. Div. Mar. 27, 2008); *see also Travelers Prop. Cas. Co. of Am.*, 2016 WL 7231605, at *4; *Virginia Sur. Co. v. Macedo*, No. CIV.A. 08-5586 GEB, 2011 WL 1769858, at *16 (D.N.J. May 6, 2011).

5

Plaintiff has specifically alleged facts to support the claim that Defendants "purposely or knowingly" made false or misleading statements in order to evade the full payment of premiums. *See, e.g.*, Compl. ¶¶ 40-41, 45, 51, 60-61.

Defendants' third argument, that the claim should be dismissed because "the statements and representations that Plaintiff alleges 'are false and misleading' . . . are either (i) not the types of statements that can even *be* false and misleading, or (ii) not statements that fall under *N.J.S.A.* 34:15-57.4," also fails. At least some of the statements listed in the Complaint are the type of statements that can be false and misleading and are statements that fall under *N.J.S.A.* 34:15-57.4. In particular, Defendants' claim that subparagraphs (a), (b), and (d) of paragraph 50 of the Complaint "all relate to future events and are not actionable" fails. *See* ECF No. 5-1 at 5. As Defendants acknowledge in their Reply, "a future promise may be fraud when a plaintiff proves 'by a preponderance of evidence, that at the time the promise was made, the promisor did not intend to fulfill the promise.'" ECF No. 13 at 4 (citation omitted). Here, Plaintiff has made specific allegations in subparagraphs (a), (b), and (d) that at the time Defendants made representations of cooperation and projections of future wages to Plaintiff, Defendants knew these representations were incorrect. Compl. ¶¶ 59-60. Plaintiff has additionally alleged that Defendants, in fact, failed to comply with the representations of cooperation and that the actual wages subsequently were significantly more than the projected wages Defendants submitted, suggesting that Defendant's projections were intentional misrepresentations. *See, e.g.*, Compl. ¶¶ 45, 49-50. Accordingly, Plaintiff has pled sufficient facts to support its claims that Defendants' future promises were fraudulent. *See Fimbel v. Fimbel Door Corp.*, No. CIV.A. 14-1915 FLW, 2014 WL 6992004, at *5 (D.N.J. Dec. 10, 2014) (finding that on a motion to dismiss allegations of subsequent refusal to fulfill earlier promises were sufficient to support a claim for common law fraud).

Similarly, the Court does not find compelling Defendants' argument that "[s]ubparagraph (c) is not plead with specificity as required by F.R.C.P. 9." ECF No. 5-1 at 5. Subparagraph (c) of paragraph 59, and subparagraph (c) of paragraph 60, allege that Defendants made a false or misleading representation in the Updated Application, by stating that the "current total wages for Paystaffing was $1,765,443" when total wages were, in fact, "materially more." Contrary to Defendants' assertion that "there is nothing else in the Complaint that provides even a reasonable basis for such allegation," ECF No. 5-1 at 5, the Complaint provides sufficient allegations to survive dismissal at this stage. In particular, the Complaint alleges the "projected total wages" listed in the Updated Application were also "$1,765,443", Compl. ¶¶ 41, 59(d), when an audit subsequently established that the total payroll was more than $6 million, Compl. ¶ 45.

In light of the foregoing, the Court need not at this time consider whether each particular alleged statement or representation listed in paragraph 59 was independently sufficient to support the claim, as it is clear that at least some of the alleged statements or representations were of a type that could give rise to a claim.

Defendants' fourth argument, that the claim should be dismissed as to Khalil, also fails at this stage in the litigation. Defendants' argue subparagraph (a) of paragraph 59 is the only reference to an alleged misrepresentation made by Khalil and the alleged misrepresentations in subparagraph (a) are not misrepresentations under the law. ECF No. 5-1 at 6. For the reasons discussed above, the Court has concluded that the misrepresentations alleged in subparagraph (a) may give rise to a claim.

Defendants' fifth argument is that the count "must be dismissed to the extent it seeks to hold all of the Defendants jointly and severally liable." ECF No. 5-1, at 6. Defendants specifically argue that "[n]one of the allegations against Khalil overlap with the allegations against Varas" and

there is not "any allegation that [Khalil and Varas] conspired together." ECF No. 5-1 at 6. However, the Complaint specifically alleges that in the initial Application Khalil is listed as the sole owner of Paystaffing, while in the Updated Application Varas is listed as the sole owner of Paystaffing, and indicates that there had been no change in ownership in the prior three years. Compl. ¶ 39. Taken together with remaining allegations in the Complaint, at this stage this is sufficient for the claim to proceed to the extent it seeks to hold all of the Defendants jointly and severally liable.[3]

Defendants' sixth argument is that the Updated Application was not submitted until after the premium rates had already been set, and therefore, could not have been used for the purpose of evading premiums under the policy. ECF No. 5-1, at 6. This argument appears to rely on the assumption that the premiums would not or could not be altered based on the information contained in the Updated Application. This is not clear from the materials before the Court, and certain documents incorporated into the Complaint suggest it is not the case. *See, e.g.*, ECF No. 1-5.

Having considered all of Defendants' arguments in support of their motion to dismiss the First Count, the Court finds that it appropriate for this claim to proceed.

## V.     **DISCUSSION – CLAIM 2**

The Second Count in Plaintiff's complaint is titled "Claim Pursuant to the New Jersey Insurance Fraud Prevention Act" and states that it "is brought pursuant to the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1 et seq." Compl. ¶ 75. The New Jersey Insurance Fraud Prevention Act, provides a list of activities which violate the Insurance Fraud Act, N.J.S.A.

---

[3] In their Reply Defendants note that Plaintiff did not address this argument in its Opposition. ECF No. 13 at 5. While it would have been preferred that Plaintiff's had addressed this point, in light of Defendants' burden at this stage, and the perfunctory nature of Defendants' initial argument, the Court will not treat this matter as waived at this time.

17:33A-4, and states that "[a]ny insurance company damaged as the result of a violation of any provision of this act may sue therefor in any court of competent jurisdiction to recover compensatory damages, which shall include reasonable investigation expenses, costs of suit and attorneys fees." N.J.S.A. 17:33A-4. Defendants rely on the same arguments articulated for the dismissal of claim 1. ECF No. 5-1 at 7. These arguments fail at this stage for the same reasons discussed above.

## VI.   DISCUSSION – CLAIM 4

The Fourth Count in Plaintiff's complaint is titled "Successor Liability Claim with Respect to Pay2Staff, LLC" and seeks, *inter alia*, to hold Defendant Pay2Staff "liable for any and all liabilities of Paystaffing, LLC to plaintiff." Compl. ¶ 104. Plaintiff alleges that "[t]he principle asset of Paystaffing was its business relationships with various client companies that Paystaffing provided labor to," Compl. ¶ 98, that asset was transferred to Pay2Staff in a transaction that "amounted to a de facto consolidation or merger," Compl. ¶¶ 100-01, and "Pay2Staff is a continuation of Paystaffing," Compl. ¶ 102.

Defendants argue that Pay2Staff cannot be held liable because the business relationships that Plaintiff alleges were transferred to Pay2Staff were not an asset of Paystaffing, but instead were a personal asset of Varas, ECF No. 5-1 at 8-9, and Plaintiff has not sufficiently alleged a *de facto* merger occurred between Paystaffing and Pay2Staff as all of the relevant allegations in the complaint were "merely conclusions." ECF No. 13 at 7-8.

In general, "New Jersey corporate law provides that where one company sells or otherwise transfers all its assets to another company the latter is not liable for the debts and liabilities of the transferor." *Portfolio Fin. Servicing Co. ex rel. Jacom Computer Servs. v. Sharemax.com, Inc.*,

334 F. Supp. 2d 620, 624 (D.N.J. 2004) (citation omitted). However, there are four recognized exceptions to the general rule where:

> (i) the purchaser expressly or implicitly agrees to assume the other company's debts and obligations;
> (ii) the purchase is a de facto consolidation or merger;
> (iii) the purchaser is a mere continuation of the seller; or
> (iv) the transfer of assets is for the fraudulent purpose of escaping liability.

*Id.* at 625.

As an initial matter, Defendants dispute that any assets were transferred from Paystaffing to Pay2Staff. In the Complaint, Plaintiff specifically alleges that "the business of Paystaffing, consisting primarily of its relationships with the client companies to whom it provided labor, was transferred to Pay2Staff." Compl. ¶ 99. Defendants point to case law distinguishing personal goodwill and business goodwill and appear to analogize this to customer lists, stating "the Paystaffing customer lists were personal to Varas, who developed and maintained the client relationships." ECF No. 13, at 7. In contrast, Plaintiff cites law holding that customer lists can constitute corporate assets. ECF No. 10, at 19-20. Ultimately, as it is clear that this is a factual dispute, and as Plaintiff has sufficiently pled that the transfer of customer lists was a transfer of a corporate asset, it is appropriate to allow this question to proceed to discovery.

In its complaint, Plaintiff alleges that "[t]he transaction between Paystaffing and Pay2Staff amounted to a de facto, consolidation or merger," "Pay2Staff is a continuation of Paystaffing," and "[t]he transaction between Paystaffing and Pay2Staff was entered into fraudulently in order to escape liability to Hartford." Compl. ¶¶ 101-03. In support of these conclusions, Plaintiff alleges a variety of facts, specifically:

- "[W]hile Paystaffing and Varas disputed Hartford's audit and then negotiated and executed the Payment Plan Agreement, the business of Paystaffing, consisting primarily of its relationships with the client companies to whom it provided labor, was transferred to Paystaffing." Compl. ¶ 99; *see also* Compl. ¶ 51.

10

- "Paystaffing and Pay2Staff had the same or substantially similar ownership (Khalil and Varas), the same or substantially similar management (Khalil and Varas), the same or substantially similar website, the same or substantially similar clients, [and] the same or substantially similar operations . . . ." Compl. ¶ 100; *see also* Compl. ¶ 52.

While Defendants claim that these allegations are "mere conclusions," ECF No. 13 at 8, the Court finds that at this stage these allegations are sufficient to support Plaintiff's claim that Pay2Staff can be held liable under a theory of successor liability. These allegations, go substantially beyond "a formulaic recitation of the elements" of successor liability, and instead constitute specific factual allegations, which if subsequently established with evidence could carry Plaintiff's burden. Accordingly, Defendants' motion to dismiss claims of successor liability are denied.

## VII.  DISCUSSION – CLAIM 5

The Fifth Count in Plaintiff's complaint is titled "Claim for Piercing the Corporate Veil" and states that the "corporate veil of Paystaffing should be pierced to hold Khalil and Varas personally liable." Compl. ¶ 107. "Piercing the corporate veil under New Jersey law is appropriate where one corporation so dominated another corporation that it had no separate existence and was merely a conduit of another corporation, and the dominant corporation used the controlled company to perpetuate a fraud or injustice." *Port Drivers Fed'n 18, Inc. v. All Saints Exp., Inc.*, 757 F. Supp. 2d 443, 456 (D.N.J. 2010). In assessing whether the first component of the test is met courts in New Jersey have identified seven factors that help guide this analysis:

> (1) gross undercapitalization; (2) failure to observe corporate formalities; (3) non-payment of dividends; (4) the insolvency of the debtor corporation at the time; (5) non-functioning of other officers or directors; (6) absence of corporate records; and (7) the fact that the corporation is merely a façade for the operations of the dominant stockholder or stockholders.

*Id.* at 457.

Plaintiff has alleged that the business of Paystaffing was transferred to another entity entirely owned by Khalil in order to avoid Paystaffing's liabilities, suggesting the first and fourth factors weigh in favor of piercing the corporate veil. *See* Compl. ¶¶ 9, 51, 103. Plaintiff has further alleged that Khalil and Varas were members of Paystaffing and occupied high managerial positions at Paystaffing, and each indicated they were they sole owner of Paystaffing but that there was no transfer of ownership. Compl. ¶¶ 8, 11-12, 23-24, 38-39. This indicates a failure to observe corporate formalities and suggests that the corporation is merely a façade for the operations of the dominant stockholder or stockholders. *Travelers Prop. Cas. Co. of Am.*, 2016 WL 7231605, at *9 (piercing the corporate veil on summary judgement where defendant established various corporations each of which "were mere instrumentalities for his business operation").

This is further supported by Defendants' claim in their briefing that the primary business of Paystaffing was, in fact, a personal asset owned by Varas. *See* ECF No. 13 at 7. Accordingly, it appears that Plaintiff has pled sufficient facts to meet the first component of the test for piercing the corporate veil.

As discussed above, Plaintiff has pled sufficient facts to claim that Varas and Khalil were using Paystaffing to perpetuate a fraud. Accordingly, at this stage the Court concludes that sufficient facts have been alleged for this claim to proceed.

## VIII. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is denied.

Dated: February 28, 2017

                                             **HON. CLAIRE C. CECCHI**
                                             **United States District Judge**